## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, *et. al* | Case No. 21-1131 |
| | **OPPOSED MOTION** |
| Plaintiff, | |
| -vs- | |
| Archer Systems, LLC | |
| Defendant. | |

## CERTAIN INSURERS' MOTION TO COMPEL ARCHER SYSTEMS, LLC TO COMPLY WITH THEIR SUBPOENAS TO PRODUCE DOCUMENTS

Collin J. Cox
Gibson Dunn & Crutcher LLP
811 Main Street
Suite 3000
Houston, TX 77002
ccox@gibsondunn.com
Tel: +1 346-718-6604
State Bar No.: 24031977

*Counsel for National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, The Insurance Company of the State of Pennsylvania*

## TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................. 1

I      THE SUBPOENA CONCERNS RELEVANT, FACTUAL
INFORMATION ................................................................................. 1

II     THE INFORMATION THE INSURERS SEEK OF ARCHER IS NOT
PRIVILEGED ..................................................................................... 7

      A.     Archer has the burden to show privilege  and have failed to make a
valid claim of privilege ........................................................... 7

      B.     The Insurers seek factual information, not privileged legal
communications. .................................................................... 9

      C.     Archer Failed to Provide a Privilege Log. ............................... 11

      D.     If any privilege applies, then the disclosure  to Archer waived
privilege. ............................................................................... 12

      E.     The work product doctrine does not apply here ....................... 14

CONCLUSION ......................................................................................................... 16

National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, The Insurance Company of the State of Pennsylvania (collectively, the "AIG Companies"), American Zurich Insurance Company, American Guarantee and Liability Insurance Company, and Steadfast Insurance Company (collectively, "Zurich"), and Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America, ("Century") (collectively, the "Insurers") respectfully submits this Motion to Compel Archer Systems, LLC ("Archer") to comply with the subpoena to produce documents issued by Century in September 2021 and certain insurers, including the AIG Companies and Zurich in October 2021 (the "Subpoenas").  The Subpoenas relate to the chapter 11 proceedings, No. 1:20-bk-10343, (the "Bankruptcy Proceedings") pending in the Bankruptcy Court for the United States District Court for the District of Delaware (the "Delaware Court") (the "Underlying Action"). This Court has jurisdiction over this matter pursuant to Federal Rule of Civil Procedure 45(c) as the Subpoenas required compliance in this District.  For avoidance of redundancy, the Insurers incorporate by reference the Preliminary Statement and Background sections of their Motion to Transfer filed concurrently with this Motion.

## ARGUMENT

## I        THE SUBPOENAS CONCERN RELEVANT, FACTUAL INFORMATION

The material the Insurers seek is relevant to investigating the claims explosion that overwhelmed Boy Scouts post-petition, disputed issues concerning solicitation, and a host of other confirmation issues. The Delaware Court has already authorized the discovery at issue here.[1] In permitting discovery against claim aggregators, this Court observed:

---

[1]     Appendix to Certain Insurers' (I) Motion to Compel Archer Systems, LLC to Comply with Their Subpoenas to Produce Documents, (II) Motion to Transfer Enforcement of Certain

> I think the ***evidence that was submitted raises concerns about how some of these claims were generated*** and the recent declaration where Mr. Kosnoff adds to that concern. So, at this time, I'm going to permit that discovery. I think the discovery could be relevant to voting and I think we need to get that underway, regardless of the plan that's in front of me.[2]

These "concerns" apply directly to Archer, as it prepared well over one thousand proofs of claim ("POCs") in the Bankruptcy Proceedings,[3] many of which had serious defects, including POCs for which it appears that the claimant was not of scouting age at the time the alleged abuse occurred or never lived in the state in which the abuse was alleged to have occurred.[4] A number of the POCs submitted by Archer were also submitted by claimants who submitted multiple POCs and others were missing key information.[5] In fact, Century's forensic evidence shows that, of the 1,424 POCs which appear to have been authored by a single Archer employee, Robyn LeGris, 91.9% of those POCs had one or more missing pieces of information.[6]

The Delaware Court has already found that information regarding the generation of claims is relevant to plan confirmation,[7] "whether signed by an attorney or signed by a client, the survivor."[8] In particular, Judge Silverstein stated that "advertising is relevant and I think the intake is relevant, as well as the process by which the proof of claim form, itself, was generated, and what information was reviewed and how that was done."[9] These issues raise serious questions about the solicitation and claims generation process, and the confirmability of BSA's

---

Insurers' Subpoenas of Archer Systems, LLC, and (III) Motion to Expedite Certain Insurers' Motion to Transfer ("Appx.") Tab 1 (Discovery Order).

[2]  *See* Appx., Tab 2 (Aug. 30, 2021 Hr'g Tr.) at 46:11–21 (emphasis added).

[3]  Appx., Tab 3 (Hinton Decl.) at 9; Appx. Tab 4 ( Rule 2004 Motion) at 15.

[4]  *Id.* (Hinton Decl., Appx. B)

[5]  *Id.* (Hinton Decl., at 6, Appx. B.)

[6]  *Id.* (Hinton Decl., at Appx B).

[7]  Appx. Tab 5 (Hrg. Tr. Dec. 2), at 69:23-24, 70:9-12.

[8]  *Id*. at 74:23-25

[9]  *Id*. at 72:13-16

plan.  The involvement of Archer in the claims process is thus relevant to plan discovery and necessary to develop several of the Insurers' plan objections.

*First*, the claims explosion that overwhelmed Boy Scouts post-petition—in which Archer was directly involved—raises questions about manipulation of the voting process. Investigating illegitimate or non-existent claims—controlled by attorneys through master ballots—is necessary to ensure the integrity of the voting process, and the Plan's compliance with Section 1129(a)(10). That section requires the Court confirm that at least one class of impaired claims accepts the plan, which includes ensuring unimpaired claimants are not permitted to vote.[10] Absent this discovery, it will be impossible to determine if the plan vote is legitimate or if all votes should count.[11] The  discovery will likely shed light on the conduct of the law firms Archer worked with, including Marc Bern & Partners, which filed more than 900 POCs in the bankruptcy proceedings, and Junell & Associates, which filed over 500 POCs.  As described above, certain of the POCs prepared by Archer are highly suspect, and discovery is necessary to examine the integrity of the claim solicitation and submission process.

*Second*, that the proposed plan offers a $3,500 expedited distribution to any claimant, without any "additional information to the Settlement Trust" runs afoul of the good faith requirement in Bankruptcy Code Section 1129.[12] On its face, vote buying reflects a lack of good faith, as does paying invalid claims. This concerns insurers because the avalanche of post-petition claims increases the "quantum of liability [they] would be called to absorb" while

---

[10]   *See In re Combustion Engineering*, 391 F.3d 190, 244–47 (3d Cir. 2004) (Third Circuit was concerned that "stub" claimants, who were not impaired (or "only slightly impaired"), would get to vote on the plan).

[11]   *See* 11 U.S.C. § 1126(a) (holders of claims may vote to accept or reject a plan).

[12]   Appx. Tab 6 (BSA Plan) at Art. III.B.10; Appx. Tab 7 (BSA Disclosure Statement) at Art. VII, Sec. B.5.a.

impairing their contractual rights.[13] Among the ways that the Plan impairs insurers' rights is by supposedly empowering the Trustee to abrogate coverage defenses, including the statute of limitations, while shielding Abuse Claims from judicial scrutiny prior to allowance and payment.[14] Investigating how many claims have been improperly submitted goes to this Plan objection. Moreover, discovering later that POCs were improperly generated will undermine the vote and lead to an eleventh-hour disruption of any confirmation.[15]

*Third*, attorneys who signed POCs had a legal responsibility to vet them, making discovery even more appropriate. It is not clear whether the lawyers who signed POCs on behalf of clients complied with (i) the oath they affirmed by signing the POCs or (ii) their obligations under Rule 9011(b), which states that by signing "a petition, pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the allegations and other factual contentions have evidentiary support."[16]

An attorney undertakes a legal responsibility by affirming the oath in a POC. Disregarding that oath exposes an attorney to sanctions, disciplinary action, and even criminal penalties.[17] In addition, as the court stated in *In re Obasi,* "Bankruptcy Rule 9011 has

---

[13]   *See In re Global Indus. Techs., Inc.*, 645 F.3d 201, 212 (3d Cir. 2011); *see also In re SPM Mfg. Corp.*, 984 F.2d 1305, 1311 (1st Cir. 1993) (bankruptcy courts lack authority to enter orders that "expand the contractual obligations of parties"); *In re Crippin*, 877 F.2d 594, 598 (7th Cir. 1989) ("[B]ankruptcy courts do not have the power to rewrite contracts to allow debtors to continue to perform on more favorable terms.").

[14]   *See* Appx. Tab 6 (BSA Plan) at 135, Ex. A, Trust Distribution Procedures, Art. VIII.E.

[15]   *See* 11 U.S.C. § 1126(a); *see also* Appx., Tab 16 (Scheduling Order, at ¶ 7) (exempting voting issues from discovery deadlines).

[16]   Fed. R. Bankr. P. 9011(b); *see also* Model R. Prof. Conduct 3.3, cmt. 3 (ABA 2011) ("[A]n assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry.")

[17]   *See e.g.*, *In re Disciplinary Proceeding Against McGrath*, 178 Wash. 2d 280, 294 (2013)

4

specifically been held to apply to proofs of claim," which mandates a pre-filing "inquiry"[18] and "[c]ompliance with Bankruptcy Rule 9011 is ***particularly important for proofs of claim*** because a properly filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim," and "[t]he Court must therefore be able to rely on the integrity of the proofs of claim before it."[19]

Nor is this duty to investigate delegable—not even to the signing attorney's associate, and certainly not to a claim aggregation shop preparing thousands of claims for numerous law firms. In *Obasi*, the signing attorney relied on a litigation support firm to "prepare[] proofs of claim, which were then submitted to the firm for review" before filing.[20] The associate, working "under the general supervision of" the signing attorney, would review the POCs using a checklist and file them using the signing attorney's electronic signature.[21] The court found this conduct "runs afoul of Bankruptcy Rule 9011" because "[t]he person signing, filing, submitting, or advocating a document has a ***nondelegable*** responsibility to the court" and "is ***personally*** responsible for reviewing the document."[22] As the Third Circuit has explained, this duty

---

(disbarring attorney who filed false proofs of claim); *see also* 18 U.S.C. §§ 152(4), 157; *U.S. v. Connery*, 867 F.2d 929, 932 (6th Cir. 1989) (same); *In re Thomas*, 337 B.R. 879, 886 (Bankr. S.D. Tex. 2006) (referring similar conduct to the U.S. Attorney).

[18]  No. 10-10494 (SHL), 2011 WL 6336153, at *7 (Bankr. S.D.N.Y. Dec. 19, 2011); *see also Hannon v. Countrywide Home Loans, Inc. (In re Hannon)*, 421 B.R. 728, 731 (Bankr. M.D. Pa. 2009); *In re Thomas*, 337 B.R. 879, 895 (Bankr. S.D. Tex. 2006), *aff'd*, 223 Fed. Appx. 310 (5th Cir.2007); *Cash-N-Advance v. Dansereau*, 64 Fed. Appx. 417 (5th Cir. 2003); *Knox v. Sunstar Acceptance Corp. (In re Knox)*, 237 B.R. 687, 699 (Bankr. N.D. Ill. 1999).

[19]  *Id.* (emphasis added, internal quotations and citations omitted).

[20]  2011 WL 6336153 at *2.

[21]  *Id.*

[22]  *Obasi* 2011 WL 6336153, at *3, 4, 8; 655 F.3d 274, 284 (3d Cir. 2011) (internal quotations and citations omitted); *see also In re Taylor*, 407 B.R. 618, 647 (Bankr. E.D. Pa. 2009) ("[I]n signing and presenting a document without any knowledge of its factual basis . . . [lawyer] failed to discharge her duty."), *rev'd*, No. 09-CV-2479-JF, 2010 WL 624909 (E.D. Pa. Feb. 18, 2010), *aff'd in part, vacated in part, rev'd in part*, 655 F.3d 274 (3d Cir. 2011).

5

"requires more than a rubber-stamping of the results of an automated process by a person who happens to be a lawyer."[23]

**Fourth**, the Delaware Court has held it would allow discovery into diligence behind attorney-signed POCs, finding that an attorney who signs a claim "might be[come] … a fact witness" and "may be subject to a deposition."[24] The Court has emphasized the significance of attorneys, rather than plaintiffs, signing POCs and determined that such an act subjects them to "discovery before this Court, the same as if the signer where the creditor himself."[25] "Moreover, the Delaware Court cautioned that it is "ill-advised" for attorneys to sign POCs and explained that it would be "concern[ed]" if "a thousand claims [are] signed by a particular lawyer."[26] The Delaware Court's holding is consistent with *In re Rodriguez*,[27] where the court held that "signing a proof of claim is an assertion of personal knowledge of the facts alleged [therein]," which subjects the attorney to becoming a "fact witness as to the allegations" in the POC.[28] Just as a fact witness cannot invoke the attorney-client privilege to block cross-examination, an attorney signing a proof of claim "results in waiver of otherwise applicable privileges."[29] Other courts in similar contexts are in accord.[30] If the signing attorneys waived privilege by placing their

---

23  655 F.3d 274, 288 (3d Cir. 2011).

24  *See* Appx. Tab 8 (Oct. 14, 2020 Hr'g Tr.) at 183:19–22; 170:2–12.

25  Appx. Tab 9  (Del. Bankr. 20-10343, Nov. 29, 2021 Hr'g Tr.) at 91:19-25.

26  *See* Appx. Tab 8 (Oct. 14, 2020 Hr'g Tr.) at 190:12–17; 183:19–22; 170:2–12.

27  No. 10-70606, 2013 WL 2450925 (Bankr. S.D. Tex. June 5, 2013).

28  *Id.* at *3–4.

29  *Id.* at *4.

30  *See Swanson v. Trasino Park-Hudsons, LLC* (*In re Vission , Inc.*), No. 07-21957, 2008 WL 2230741, at *4 n.3 (Bankr. E.D. Wis. 2008) ("By signing the affidavit, counsel runs the risk of becoming a fact witness, and any future hope of asserting privilege may disappear."); *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473-74, 2006 (6th Cir. 2006) ("[C]ounsel for petitioners elected to interject [the attorney] into these proceedings and thereby waived the attorney-client privilege. In so doing, the work product privilege was waived as well."); *In re Gawker Media LLC*, No. 16-11700 (SMB), 2017 WL 2804870, at *2, 4 (Bankr. S.D.N.Y. June 28, 2017) (Rule 2004 attorney discovery should not be denied "merely because it may touch

6

diligence process at issue, then that extends to the third-party vendor those lawyers used to affix signatures to the questionable POCs. It cannot be that attorneys can delegate their non-delegable duties under Rule 9011(b) while not also transferring the waiver about inquiring into the underlying diligence.

## II      THE INFORMATION THE INSURERS SEEK OF ARCHER IS NOT PRIVILEGED

### A.      Archer has the burden to show privilege and has failed to make a valid claim of privilege

As the party asserting attorney-client privilege, Archer has the burden of proof to establish the elements of the privilege.[31] As the attorney client privilege is an "obstacle to the investigation of the truth" it is "strictly confined within the narrowest possible limits consistent with the logic of its principle."[32] The Fifth Circuit has defined attorney-client privileged communications as "1) confidential communications; 2) made to a lawyer or his subordinate; 3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding."[33] A

---

on privileged matters," especially where attorney would be examined about factual matters); *Cf. Friction Div. Prod., Inc. v. E.I. Du Pont De Nemours & Co.*, 117 F.R.D. 535, 538 (D. Del. 1987) (factual representations "create[] the opening for [opposing party] to investigate the foundations for those representations").

[31]  *U.S. v. Miller*, 660 F.2d 563, 570 (5th Cir. 1981) ("With respect to the attorney-client privilege, it is well established that appellant, the party asserting the privilege, has the burden of proof"); *One World Foods, Inc. v. Stubb's Austin Restaurant Co. LC*, No. A-15-CA-1071-SS, 2016 WL 8678866, at *5 (W.D. Tex. Dec. 2, 2016) ("The party asserting a privilege exemption from discovery must demonstrate its applicability"); *In re Royce Homes, LP*, 449 B.R. 709, 725 (Bankr. S.D. Tex. 2011) (party asserting attorney-client privilege "bears the burden of proving each and every element of the definition of attorney-client privileged communications, including confidentiality and absence of waiver.").

[32]  *U.S. v. Pipkins*, 528 F.2d 559, 562-63 (5th Cir. 1976); *AHF Cmty. Dev., LLC v. City of Dallas*, 258 B.R. 143, 146 (N.D. Tex. 2009) (the privilege "impedes the full and free discovery of truth and therefore should be strictly construed."); *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004) ("courts generally construe the privilege narrowly because assertion of privileges inhibits the search for truth").

[33]  *Royce Homes*, 229 BR at 723 (citing *U.S. v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997).

party invoking the privilege must prove "(a) each and every essential element of the definition of attorney-client privileged communications; and (b) that the privilege applies to each document he or she seeks to protect."[34] "A failure of proof as to any element causes the claim of privilege to fail."[35]

Archer initially agreed to produce documents responsive to the Insurers' requests, but subsequently claimed in a letter to counsel to Century that "Archer cannot produce documents in response to the Subpoena[] on the basis that [it] seek[s] information protected by the attorney-client privilege, the work product doctrine, and/or any other applicable privilege or protection."[36] This came after Archer had delivered responses and objections ("R&Os") that did not assert privilege in relation to the majority of the requests, and even where it mentioned privilege, Archer had agreed to produce responsive documents.[37] Archer claims this is because it consulted with law firms with which it worked, who had informed Archer that "the materials sought are protected by the attorney-client privilege and/or work product doctrine,"[38] despite the fact Archer is represented by counsel who saw no basis to assert privilege in the R&Os.

Beyond a vague and unsupported statement that "three law firms" indicated that the requested discovery is somehow privileged, Archer fails to provide any explanation whatsoever as to *why* any of the requested discovery is privileged.  Its conclusory statements are insufficient to validly assert privilege as "blanket and conclusory assertions of privilege do not satisfy a claimant's burden whatsoever."[39] Archer utterly fails to "describe the nature of the withheld

---

[34] *Id* at 727.
[35] *Id*. (citing *Varo, Inc. v. Litton Sys., Inc.*, 129 F.R.D. 139, 142 (N.D. Tex. 1989)).
[36] Appx. Tab 10 (Archer letter dated Oct. 15, 2021).
[37] Appx. Tab 11 (Archer R&Os to Century Subpoena).
[38] Appx. Tab 10 (Archer letter dated Oct. 15, 2021).
[39] *Id.*

documents, communications, or tangible things in a manner that" "enable[s] the parties to assess the claim,"[40] as required by the Federal Rules.

Moreover, Archer cannot make out a valid claim of privilege over the withheld documents because communications with a third party are not privileged. Privilege only attaches to confidential communications "***made to a lawyer or his subordinate*** . . ."[41] Archer is neither. Archer is not a law firm, and does not even claim any lawyers were involved with claimants for the entire duration of Archer's contact with claimants. As Archer is a third party, communications in its possession are not privileged.[42] Even where communications are made between lawyer and client, the privilege protects "only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege."[43] Archer's initial agreement, with the advice of its counsel, to provide responsive documents indicates that the documents do not implicate privilege concerns.

### B.    The Insurers seek factual information, not privileged legal communications.

Most of the RFPs do not seek information that could possibly be privileged.[44] Indeed RFPs 1 to 9 were explicitly included in the Rule 2004 Motion and approved in the Delaware Court's corresponding Order.[45]

- RFPs 1 and 2 seek claim files (including associated signature pages and metadata) and intake logs- not communications. Such information is manifestly not protected, because "[t]he privilege only protects disclosure of communications; it does not

---

[40]    Fed. R. Civ. P. 45(e)(2)(A); Fed. R. Bank. P. 9016.

[41]    *Royce Homes*, 229 BR at 723

[42]    *S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 317 (N.D. Tex. 2009) ("Generally, a party waives the attorney-client privilege when it voluntarily discloses the privileged communication to a third party.")

[43]    *Navigant Consulting*, 220 F.R.D. at 473 (quoting *Fisher v. U.S.*, 425 U.S. 391, 403, (1976)).

[44]    Appx. Tab 12 (Archer Subpoena).

[45]    Appx. Tab 1 (Discovery Motion).

protect disclosure of the underlying facts." [46] These RFPs are essential to identifying how the proofs of claim were signed and by whom, and what process existed to support any attorney affirmation (if signed by attorneys).

- RFP 3 seeks names and email addresses. Contact information is plainly not a communication and is not privileged.[47]

- RFP 4 seeks agreements with law firms about BSA-related services. Again, these are not privileged communications. The agreements show the relationship between Archer and the law firms, including when and how those relationships formed.

- RFP 5 seeks documents about the processes and procedures followed in providing services in connection with the Bankruptcy Proceedings, such as the protocols used for executing signatures for the POCs. This RFP too seeks factual information. Indeed the Delaware Court has already commented that: "information with respect to the process of generating these proofs of claim strike me, in the big picture, to not be privileged."[48]

- RFP 6 seeks documents concerning communications about obtaining attorney signatures for POCs submitted in this case. This RFP thus seeks information about processes, not any privileged legal analysis. Again, this falls into the category of "information with respect to the process of generating these proofs of claim," which the Delaware Court has already indicated are not privileged.[49]

- RFP 7 seeks documents and communications relating to POCs, which is not limited to privileged communications.

- RFP 8 seeks the names of employees or members of other organizations who worked on this matter, which too is plainly factual information.

- RFP 9 seeks documents concerning ownership or financial interest in claims, and the marketing of claims. Indeed, the Fifth Circuit has repeatedly found that "matters involving the payment of [attorney] fees" are "not generally privileged."[50]

- RFP 10 seeks documents concerning one employee's involvement in the POCs, i.e. factual information.

---

[46] *Upjohn Co. v. U.S.*, 449 U.S. 383, 395 (1981); *Adams v. Memorial Hermann*, 973 F.3d 343, 349 (5th Cir. 2020) (same).
[47] *In re e2 Communications, Inc.*, No. 05–3542–BJH, 2006 WL 6510985 *5 (Bankr. N.D. Tex. 2006) (contact information, even in emails between attorney and client, is not privileged.)
[48] Appx. Tab 5 (Dec. 2, 2021 Hrg. Tr.) at 70:18-20.
[49] *Id.*
[50] *In re Grand Jury Subpoena for Attny. Rep. Crim. Def. Reyes Requena*, 913 F.2d 1118, 1123 (5th Cir. 1990); *Taylor Lohmeyer Law Firm P.L.L.C. v. U.S.*, 957 F.3d 505, 510 (5th Cir. 2020).

- Archer RFP 11 / Stratos RFP 13 seeks the contents of "intake systems" used to track and process POCs, including metadata, which is not limited to communications and requests documents having nothing to do with the provision of legal advice.

By their plain terms, all of these RFPs seek purely factual information, or information that does not constitute communications, about matters that have nothing to do with legal advice—matters to which no privilege could apply. As the Delaware Court has stated, "Most of the requests" getting at the generation of claims "do not implicate privileged information."[51]

### C.      Archer Failed to Provide a Privilege Log.

Archer cannot just assert privilege and then not produce any documents. To establish privilege, Archer must provide a privilege log or otherwise assert privilege "with particularity for each document, or category of documents, for which privilege is claimed."[52] It must "describe the nature of the withheld documents, communications, or tangible things in a manner that" "enable[s] the parties to assess the claim."[53] A privilege log should:

> not only identify the date, the author, and all recipients of each document listed therein, but should also describe the document's subject matter, the purpose of its production, and a specific explanation of why the document is privileged or immune from discovery.[54]

But Archer does not provide any description of the withheld documents whatsoever and rests on the bare assertion that privilege exists over every responsive document it possesses. In response to similar attempts to assert privilege on a blanket basis, the Delaware Court has emphasized that

---

[51]   Appx. Tab Ex. 5 (Dec. 2, 2021 Hrg. Tr. ) at 70:14-16.

[52]   *Jolivet v. Compass Grp. USA, Inc.*, No. 3:19-cv-2096-B, 2021 WL 5176930, at *11 (N.D. Tex. Sept. 14, 2021) (citing *Victor Stanley Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 21, 265-67 (D. Md. 2008))

[53]   Fed. R. Civ. P. 45(e)(2); Fed. R. Bankr. Proc. 9016; *see also Wal-Mart Stores, Inc. v. City of Pontiac Gen. Emps.' Ret. Sys.,* 314 F.R.D. 138, 141 (D Del. 2016) (Party "failed to assert a valid claim of privilege with respect to the documents requested" by simply claiming that documents are privileged).

[54]   *Royce Homes*, 449 B.R. at 728.

privilege need be assessed on a "a question-by-question basis, or if it's documentation, a document-by-document basis."[55] The privilege assertion is insufficient on this basis alone.

### D. If any privilege applies, then the disclosure to Archer waived privilege.

There is no evidence that any of the documents in Archer's possession were ever privileged by virtue of any relationship between claimants and any law firms.  Archer does not provide any support for its statement that it "received instructions from the firms that the materials sought are protected by the attorney-client privilege and/or work product doctrine."[56]  In order to demonstrate privilege applies, Archer has an affirmative burden to establish that waiver did not occur, which it has not met.[57] Materials in Archer's possession are by definition something for which privilege—if it ever existed—was waived as "attorney-client privilege is waived if a confidential communication has been disclosed to a third party."[58] Moreover, as Century's forensic evidence shows, hundreds of POCs submitted by a third-party entity, Stratos Legal, identified an Archer employee as the author.[59] Thus it appears many of the documents requested by the Subpoenas were transferred to or among multiple third parties, presenting further opportunities for waiver of privilege.

---

[55]  Appx. Tab Ex. 5 (Dec. 2, 2021 Hrg. Tr. ) at 71:1-3.

[56]  Appx. Tab 10 (Archer Letter).

[57]  *One World Foods*, 2016 WL 8678866, at *5 ("party asserting attorney-client privilege must prove that waiver by breach of confidentiality did not occur.")

[58]  *One World Foods*, 2016 WL 8678866, at *5; *See also Microtune, Inc.*, 258 F.R.D. at 317 ("Generally, a party waives the attorney-client privilege when it voluntarily discloses the privileged communication to a third party.")

[59]  Appx. Tab 3 Hinton Decl. Appx. B, n18.; Appx. Tab 13 Speckin Decl. ¶ 17.

A narrow exception to waiver applies only where the third party "enabled the giving of legal advice." [60] As with the attorney-client privilege generally, it "only applies when communications are made 'for the purpose of obtaining legal advice from the lawyer.'"[61] For example, it has been held that "[a] mere agency relationship between an attorney and an accountant will not automatically establish protection under the attorney-client privilege.'"[62] In some cases, communications to an accountant that the client's tax lawyer hires do not waive the privilege because "[a]ccounting concepts are a foreign language" to some attorneys, and the accountant's ability to translate can enable the attorneys to render sound legal advice.[63] Thus, the privilege extends to communications disclosed to a third party "only if the purpose of the third party's participation is to *improve* the comprehension of communications between attorney and client."[64]

*Ravenell v. Avis Budget Grp., Inc.*, is instructive.[65] There, defendants claimed attorney-client privilege over communications with a third-party that conducted audits on defendants' behalf. The court held that vendor communications were not privileged because they were unnecessary for effective attorney-client communication.[66] The vendor's work involved creating "an online platform for the dissemination and collection of questionnaires," then "summariz[ing] the collected data in a chart, and, based on criteria provided by defendants' counsel," "ma[king] a preliminary assessment of whether the individuals who completed the questionnaires met [certain]

---

[60] *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 134-35 (E.D. Tex. 2003) ("An exception to this rule exists for third parties who assist an attorney in rendering legal advice.")

[61] *Id* at 135.

[62] *Id.*

[63] *See Kovel*, 296 F.2d 918, 922 (2d Cir. 1961).

[64] *In re Restasis*, 352 F. Supp. 3d at 211.

[65] No. 08-CV-2113 (SLT), 2012 WL 1150450 (E.D.N.Y. Apr. 5, 2012).

[66] *Id*. at *3.

requirements."[67] The court held that defendants waived privilege as they failed to show why the auditing firm needed "to review the contents of the responses," rather than simply provide the platform, and the auditing firm's "preliminary assessments neither improved the comprehension of the communications between attorney and client, nor provided advice outside the general expertise of attorneys."[68]

Archer's work was very similar to that of the vendor in *Ravenell*. It is hard to see how disclosing confidential client communications to Archer was "necessary" for its client law firms to render legal advice. In fact no court could conclude that it was, as Archer does not even identify those law firms. To be clear, Archer's work in generating claim forms was administrative, not legal, and did not improve "the comprehension of the communications between attorney and client."[69] Archer's work was more akin to creating an "online platform" for "collect[ing] questionnaires," "summariz[ing] the collected data in a chart," and then "making a preliminary assessment of whether the individuals who completed the questionnaires" met set requirements.[70] Stratos Legal performed similar functions. Thus, the transfer of documents or communications with either one of those entities could have served to extinguish any privilege that previously existed.

### E.   The work product doctrine does not apply here.

The work-product doctrine "accords special protection from disclosure to work product revealing an attorney's mental processes."[71] It protects discovery of "documents and tangible things prepared by or for a party or that party's representative 'in anticipation of litigation or for

---

67   *Id*.
68   *Id.* (quoting *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999)).
69   *Id.* at *3.
70   *Id.* at *3.
71   *Upjohn Co.*, 449 U.S. at 385; *In re Grand Jury Subpoena,* 419 F.3d 329, 339 (5th Cir. 2005).

trial.'"[72] The "primary motivating purpose behind creation of the document must be to aid in possible future litigation."[73] The doctrine "is not an umbrella that shades all materials prepared by a lawyer, or agent."[74] "Excluded from the doctrine are materials assembled in the ordinary course of business" and "the underlying facts relevant to the litigation."[75]

The party "seeking to withhold responsive documents or materials, has the burden of demonstrating that the work product doctrine applies."[76] Like the attorney-client privilege, the work product doctrine "must be strictly construed."[77] Texas Courts have held that:

> A general allegation of work product protection is insufficient to meet this burden. Instead, a clear showing must be made which sets forth the items or categories objected to and the reasons for that objection. The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the documents constitute work product. . . . [The] party asserting the work product exemption still must provide a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure.[78]

As with the attorney-client privilege, Archer makes only a bare assertion that the work product doctrine applies, offering no clue about how documents that it created are protected by a privilege designed to shield "*the attorney's* mental processes."[79] The work product doctrine does not apply to RFPs that seek documents about *Archer's* preparation and submission of facially questionable POCs, including Archer's processes and procedures. Archer has not provided any

---

[72]   *Jolivet*, 2021 WL 517 6930 at *6.
[73]   *Id.*
[74]   *Elec. Data Systems Corp. v. Steingraber*, No. 4:02 CV 225, 2003 WL 21653414, at *4 (E.D. Tex. 2003).
[75]   *Id.*
[76]   *Compass Grp. USA Inc*., 2021 WL 517 6930 at *6.
[77]   *Id.* at *6 (citing *Zenith Ins. Co. v. Texas Institute for Surgery, L.L.P*., 328 F.R.D. 153, 162 (N.D. Tex. 2018).
[78]   *Id.*
[79]   *Upjohn Co.*, 449 U.S. at 385.

information approaching the kind of "detailed description" setting forth the specific items it claims are privileged, necessary to assert a valid claim for work product protection.[80]

      As discussed, many of the RFPs seek factual information such as Archer's contracts and procedures, or the identity of relevant parties, and cannot possibly reflect an attorney's "mental processes:" Such factual information is not protected work product, as reflected in precedent and the findings of the Delaware Court.[81] For example, **RFPs 1** and **2** seek original POC documents processed by Archer. **RFPs 3** and **6** seek factual information about how Archer submitted the POCs, and obtained Attorney signatures. **RFP 4** seeks documents related to Archer's engagement by the law firms. **RFP 5** seeks factual information about Archer's processes and procedures. And **RFP 8** seeks the identity of relevant parties or witnesses. Purely factual material of this nature from a non-attorney vendor is not subject to work product protections.[82] **RFP 9** seeks Archer's financial arrangements relating to its work processing the POCs.

      The Insurers certify pursuant to Rule CV-7 that they conferred with Counsel for Archer on the subject of this motion. Correspondence was led by Stamatios Stamoulis. Mr. Stamoulis conferred with Counsel to Archer by email on October 14, 2021 and October 15, 2021 and could not reach a resolution on the substance of this motion.

## CONCLUSION

      For the foregoing reasons, should the Court decide against transferring the Motion to Compel, the Court should grant it.

---

[80] *Compass Grp. USA Inc.*, 2021 WL 517 6930 at *6.

[81] Appx. Tab 5 (Dec. 2, 2021 Hrg. Tr.), at 112:13-17 ("To the extent that there's fact work product, I think they're entitled to that as part of an investigation of what was done"); *Elec. Data Systems Corp.* 2003 WL 21653414, at *4 (facts are excluded from work product protection).

[82] *Elec. Data Systems Corp.* 2003 WL 21653414, at *4 (the "underlying facts relevant to the litigation" are excluded from work product protections.)

Dated: December 12, 2021

                                      */s/ Collin J. Cox*

**GIBSON, DUNN & CRUTCHER LLP**
Collin J. Cox
811 Main Street
Suite 3000
Houston, TX 77002
Telephone: (346) 718-6604
Email: ccox@gibsondunn.com

-and-

**GIBSON, DUNN & CRUTCHER LLP**
Michael A. Rosenthal *(pro hac vice forthcoming)*
James Hallowell (*pro hac vice forthcoming*)
Keith R. Martorana (*pro hac vice forthcoming*)
200 Park Avenue
New York, New York 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035
Email: mrosenthal@gibsondunn.com
jhallowell@gibsondunn.com
kmartorana@gibsondunn.com

-and-

Matthew G. Bouslog (*pro hac vice forthcoming*)
3161 Michelson Drive
Irvine, California 92612
Telephone:    (949) 451-3800
Facsimile:    (949) 451-4220
Email: mbouslog@gibsondunn.com

-and-

**FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C.**
Susan N.K. Gummow (*pro hac vice forthcoming*)
222 N. LaSalle St., Suite 1400
Chicago, Illinois 60601

Telephone:    (312) 863-5000
Facsimile:    (312) 863-5009
Email: sgummow@fgppr.com

*Attorneys for the AIG Companies*

  /s/ *Kelly T. Currie*
Kelly T. Currie (*pro hac vice forthcoming*)
**CROWELL & MORING LLP**
590 Madison Ave., 20th Floor
New York, NY 10022
Phone:  (21) 895-4257
Email:  kcurrie@crowell.com

*Attorneys for American Zurich Insurance
Company, American Guarantee and Liability
Insurance Company, and Steadfast Insurance
Company*


**STAMOULIS & WEINBLATT LLC**
Stamatios Stamoulis
800 N. West Street
Third Floor
Wilmington, Delaware 19801
Telephone: 302 999 1540
Facsimile:  302 762 1688

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice forthcoming*)
Times Square Tower
7 Times Square
New York, New York 10036-6537
Telephone: 212 326 2000
Facsimile:  212 326 2061

*Counsel for Century Indemnity Company, as
successor to CCI Insurance Company, as
successor to Insurance Company of North
America*